# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, **Luis Polo**, being duly sworn, do hereby depose and state the following:

1.      I am a Border Patrol Agent with the United States Border Patrol and have been so employed since March 27, 2006.  As a Border Patrol Agent, I have gained experience in conducting investigations related to the illegal entry of aliens into United States.  I attended the Federal Law Enforcement Training Center at Artesia, New Mexico, where I received training for the purpose of accomplishing my Border Patrol duties, which includes training in immigration related law and matters.  Furthermore, I also receive training on a continuing basis for the purpose of maintaining my proficiency pertaining to Border Patrol work.

2.      Investigation reveals that, on or about Monday, July 20, 2026, **Angel Oswaldo CARABAJO-ROMERO** was found in the United States territory, in furtherance of his illegal re-entry, into the United States, upon being dropped off & eventually encountered at or near Culebrita Island, Puerto Rico.  Therefore, this Affidavit is made in support of a Criminal Complaint against **CARABAJO-ROMERO** based on violation of **Title 8, _United States Code_, Section 1326(a).**

3.      I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter.  This affidavit does not contain all the information derived from this investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

**PROBABLE CAUSE**

4.      On or about Monday, July 20, 2026, at approximately 02:00 a.m., Border Patrol Agents (BPAs) were assigned to Operation Eastern Front conducting coastal patrol operations at sea along with Customs & Border Protection (CBP) Air & Marine Office (AMO) Fajardo Marine unit near Culebra, Puerto Rico.

5.      This area is known for frequent drug & migrants smuggling activity.

6.      BPAs & Marine Interdiction Agents (MIAs) received information from the Caribbean Air & Marine Operations Center (CAMOC) that a target small vessel with potentially multiple subjects onboard had been detected on the Marine Approach Surveillance Tower (MAST) departing St. Thomas, USVI, and heading toward Culebra, Puerto Rico.

7.      At approximately 03:55 a.m., AMO Marine Unit from St. Thomas, USVI advised they encountered a vessel matching the description and conducted a marine interception due to the vessel operating without navigation lights.  Within a few minutes the other boat with BPAs arrived on scene.

8.      Upon arrival on scene, MIAs & BPA identified themselves as immigration officers and proceeded to interview intercepted subject at sea.  The intercepted at sea subject was later identified as Gregory VEGA.

9.      MIAs & BPAs questioned VEGA, as to his citizenship and nationality.

10.     VEGA freely and voluntarily admitted to being a United States citizen from Culebra, Puerto Rico but currently residing in Mayaguez, Puerto Rico.

11.     BPA proceeded to interview VEGA, who sated he was coming from St. Thomas, USVI, and claimed he had traveled there to purchase the boat he was operating.

2

12. When asked for boat registration & ownership information, VEGA stated he did not know the owner and had no paperwork or registration for the vessel, however he claimed to have paid eleven thousand ($11,000.00USD) dollars to an unknown person for the boat.

13. BPA requested VEGA to produce an identification.

14. VEGA stated his identification (ID) was inside his bag and granted consent for a search.

15. BPA found inside a bag three (03) cellphones and a bag containing what he claimed to be six to seven thousand dollars.

16. When questioned again about the boat's ownership, VEGA repeated that he did not know and stated that he bough it from someone who brought it to him in St. Thomas, USVI.

17. Due to previous similar trends for illicit activities, known human & narcotics smuggling routes, the time of night, the vessel operating without navigation lights, and inconsistencies in VEGA's story, BPA further questioned him about the real purpose of his travel.

18. Upon questioning, VEGA then admitted that he was transporting ten (10) subjects, including a subject later encountered and identified as **CARABAJO-ROMERO**, from St. Thomas, USVI and attempting to smuggle them to Culebra, Puerto Rico.

19. When questioned where he had dropped off the subjects, VEGA stated he had left them, including **CARABAJO-ROMERO**, at or near Culebrita Island, Puerto Rico; which is uninhabited and lacks fresh water or food resources.

20. While VEGA was then detained for investigative purposes and transported by boat to the Air & Marine Office facility in Ceiba, Puerto Rico, BPA conducting the questioning during intercept at sea and boarding, deboarded one boat, and boarded another CBP-AMO boat

3

to go and conduct a search & rescue of the alleged migrants, including **CARABAJO-ROMERO**, left stranded at or near Culebrita Island, Puerto Rico. When I state stranded, it is mean to be understood that VEGA make everyone jump out to the water, where sea states were in bad condition, and they had to either swim or walk through a reef in deep water to get to land or to shore towards Culebrita Island, Puerto Rico.

21.    BPA was then picked up by the upcoming morning shift, switching from one boat to another, and inserted into Culebrita Island to conduct a search & rescue to try to possibly rescue all abandoned subjects, including **CARABAJO-ROMERO**.

22.    At approximately 07:30 a.m., agents located & rescued the ten (10) abandoned subjects, including **CARABAJO-ROMERO** left stranded at or near Culebrita Island, Puerto Rico.

23.    Thankfully BPA conducting the search & rescue of the ten (10) subjects, including **CARABAJO-ROMERO**, encountered all subjects alive and in good health condition.

24.    Upon encounter, BPA identified himself as an immigration officer. Upon questioning all subjects, including **CARABAJO-ROMERO**, they all indicated their respective nationalities. There was one (01) subject from the Dominican Republic, four (04) subjects from India & five (05) subjects from Ecuador.

25.    **CARABAJO-ROMERO** indicated that he was a national and citizen of Ecuador.

26.    All subjects, including **CARABAJO-ROMERO**, admitted being in the United States illegally.

27.    All subjects, including **CARABAJO-ROMERO**, were transported by boat to the Air & Marine Office in Ceiba, Puerto Rico for further investigation, questioning and processing.

4

28. United States Border Patrol Ramey Sector was informed, and dispatched additional BPAs to assist from Aguadilla, Puerto Rico to Ceiba, Puerto Rico.

29. Upon arrival at Ceiba, Puerto Rico, BPAs from Ramey Sector in Aguadilla, Puerto Rico proceeded to assume custody of all subjects, including **CARABAJO-ROMERO**.

30. All subjects, including **CARABAJO-ROMERO**, were arrested transported from Ceiba, Puerto Rico to U.S. Border Patrol Ramey Station in Aguadilla, Puerto Rico by land on patrol vehicles.

31. Upon arrival at Ramey Station in Aguadilla, Puerto Rico; all subjects including **CARABAJO-ROMERO's** photograph & fingerprints were taken and entered to different law enforcement database systems. Record checks yielded positive prior record for **CARABAJO-ROMERO** regarding prior immigration history.

32. As to **CARABAJO-ROMERO's** prior immigration history:

    (a) On or about November 01, 2009, **CARABAJO-ROMERO** illegally entered the United States through the Sonoran Desert at or near Naco, Arizona.

    (b) On November 05, 2009, a removal order was issued against **CARABAJO-ROMERO**.

    (c) On December 04, 2009, **CARABAJO-ROMERO** was officially & physically removed from the United States to Ecuador from the Port of El Paso, Texas.

    (d) On May 14, 2010, **CARABAJO-ROMERO** illegally re-entered the United States through the Sonoran Desert at or near Naco, Arizona.

(e)     On May 20, 2010, **CARABAJO-ROMERO's** prior order of removal was reinstated.

(f)     On June 18, 2010, **CARABAJO-ROMERO** was officially & physically removed from the United States, for the second time, to Ecuador from the Port of El Paso, Texas.

(g)     On December 25, 2011, **CARABAJO-ROMERO** illegally re-entered the United States through Laredo, Texas by wading across the Rio Grande Rivera in the Deleon Ranch near Rio Bravo, Texas.

(h)     On January 12, 2012, **CARABAJO-ROMERO** was encountered by Border Patrol Agents & Immigration & Customs Enforcement (ICE) agent at 406 Lane Avenue, in Laredo, Texas.

(i)     On January 17, 2012, **CARABAJO-ROMERO's** prior order of removal was reinstated.

(j)     On February 24, 2012, **CARABAJO-ROMERO** was officially & physically removed from the United States, for the third time, to Ecuador from the Port of New Orleans, Louisiana.

(k)     On April 19, 2014, **CARABAJO-ROMERO** illegally re-entered the United States at or near Hidaldo, Texas.

(l)     On April 25, 2014, **CARABAJO-ROMERO's** prior order of removal was reinstated.

(m)     On May 01, 2014, **CARABAJO-ROMERO** filed for asylum while in custody with ICE.

6

(n)     On July 30, 2024, Withdrawal of Request for Reasonable Fear interview conducted by Newark Asylum.

(o)     On September 05, 2014, **CARABAJO-ROMERO** was officially & physically removed from the United States, for the fourth time, to Ecuador from the Port of New Orleans, Louisiana.

(p)     On November 18, 2022, **CARABAJO-ROMERO** illegally re-entered the United States at or near Santa Teresa, New Mexico.

(q)     On March 07, 2024, **CARABAJO-ROMERO's** final order of removal was reinstated.    During processing, **CARABAJO-ROMERO** claimed reasonable fear again.  On March 18, 2024, **CARABAJO-ROMERO's** fear claim was withdrawn by him.

(r)     On April 02, 2024, **CARABAJO-ROMERO** was officially & physically removed from the United States, for the fifth time, to Ecuador for the fifth time from the Port of Alexandria, Louisiana.

(s)     On December 01, 2024, **CARABAJO-ROMERO** illegally re-entered the United States at or near Santa Teresa, New Mexico.

(t)     On December 18, 2024, **CARABAJO-ROMERO's** removal order was reinstated.

(u)     On December 24, 2024, **CARABAJO-ROMERO** was officially & physically removed, for the sixth time, from the United States to Ecuador from the Port of Alexandria, Louisiana.

(v)     On July 20, 2026, **CARABAJO-ROMERO** was encountered for the seventh time at Culebrita Island, near Culebra, Puerto Rico.

33.    Border Patrol Agents advised **CARABAJO-ROMERO** of his right to legal representation & his right to speak with the Consular Officer of his native country, Ecuador.

34.    **CARABAJO-ROMERO** re-entered the United States at a place other than a designated Port of Entry.

35.    **CARABAJO-ROMERO** is a national and citizen of Ecuador, who does not possess any immigration documents allowing him to enter and/or remain in the United States legally, to include but not limited, the lack of express consent from the Attorney General of the United States, or his successor, the Secretary of the Department of Homeland Security, to reapply for admission into the United States. Furthermore, **CARABAJO-ROMERO** was not inspected, admitted, or paroled into the United States by an Officer of the Bureau of Customs & Border Protection.

36.    **CARABAJO-ROMERO** does not have any petitions pending with the Bureau of Citizenship & Immigration Services.

**[REST OF PAGE INTENTIONALLY LEFT BLANK]**

37.    Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I believe that sufficient probable cause exists to demonstrate the commission of a violation of federal law by the above-mentioned subject, to wit, a violation of Title 8, *United States Code,* Section 1326(a) – Reentry of Removed Alien.

_____
Luis Polo
Border Patrol Agent

Sworn before me pursuant to FRCP 4.1 at 1:46 PM by telephone, this 24th day of July 2026.

_____
Honorable Marcos E. López
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO

9